**Charles E. LOCKERT, Appellant**
**(Defendant Below)**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 578S89.

Supreme Court of Indiana.

July 13, 1979.

Harriette Bailey Conn, Public Defender, Carr L. Darden, Deputy Public Defender, Indianapolis, for appellant (defendant below).

Theo. L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

PRENTICE, Justice.

Petitioner (Appellant) is before this Court appealing the denial of his petition for post conviction relief pursuant to Post Conviction Remedy Rule 1. He was originally charged with First Degree Murder, Murder in the Perpetration of a Robbery and accessory after the fact of first degree murder. Ind.Code § 35–13–4–1 (Burns 1975). He entered a plea of guilty to felony murder, and was sentenced to life imprisonment. On appeal he presents the following issues for our review:

(1) Whether he was adequately advised of his constitutional rights prior to the entry of his guilty plea.

(2) Whether his guilty plea was voluntarily given.

(3) Whether he was denied effective and adequate representation by his trial counsel.

\*　　\*　　\*　　\*　　\*　　\*

### ISSUE I

Petitioner alleges on appeal that he was inadequately advised of certain of his con-

stitutional rights prior to the entry of his guilty plea. Ind.Code § 35–4.1–1–3 (Burns 1979) provides that before a trial judge accepts a plea of guilty, he must first, among other things, inform the defendant of the possible sentence which he may receive, and inform him that by his plea of guilty he is admitting the truth of the facts alleged in the indictment or information. At the guilty plea hearing, the trial judge read count II of the charging indictment for felony murder and delegated the responsibility of reading the statute upon which the charge was based, to the prosecutor. The petitioner was then questioned by the court as to whether he fully understood the charge and the penalty, to which he answered in the affirmative. Petitioner alleges on appeal that such procedures do not fully comply with the statute which mandates that the trial judge make each and every advisement provided therein.

■ We agree with the petitioner that the trial judge erred in delegating the reading of the statute to the prosecutor. However, in view of our recent decision in *Neeley v. State*, (1978) Ind., 382 N.E.2d 714 (Prentice dissenting with opinion in which DeBruler joined), wherein the court retreated from the dicta of Justice Hunter,[1] cited by petitioner, it is not material who gives the advisements, so long as the record of the guilty-plea hearing reflects that "the defendant was advised of and understood the substance of his rights.

■ With respect to petitioner's claim that he was not advised that by pleading guilty he would be admitting the truth of the facts contained within the indictment, once again the trial court's advisement failed to comply literally with the language in the statute, however, we do not find it to be reversible error in this case. In establishing a factual basis for the plea, the State introduced into evidence a statement

made by the petitioner subsequent to his arrest. In his statement the petitioner admitted to having been a participant in the felony murder with which he was charged. At the guilty plea hearing, in response to questions by the trial judge, the petitioner stated that the facts contained in the statement were true. Inasmuch as the truth of the statement was acknowledged, and inasmuch as the facts therein related constituted the crime charged and to which the petitioner entered his guilty plea, we find that the trial court's advisement under the circumstances of this case, sufficiently conformed with § 35–4.1–1–3 as to constitute an adequate inquiry into the voluntariness of the plea.

## ISSUE II

Petitioner was charged in two separate causes with the shooting deaths of Connie Jo Fivecoate and her son Chad. Pursuant to the following plea bargaining agreement, he pleaded guilty to the felony murder of Mrs. Fivecoate:

"I, Charles Lockert, being represented by counsel, having been advised of my constitutional rights with respect to the above captioned causes have entered into a plea agreement with the State of Indiana, the terms of which it is my understanding are the following:

"(1) That I would enter a plea to felony murder as alleged in Count 2 of the indictment in Cause No. 74–109 and would receive a life sentence.

"(2) That Counts 1 and 3 of Cause No. 74–109, those being first degree murder and accessory after the fact of murder, would be nolle prosequi by the State of Indiana at the time of sentencing.

"(3) That I would not file an appeal or a petition for post conviction relief with respect to Cause No. 74–109 or Cause No. 74–108.

1. "We note that petitioners' guilty pleas were entered on January 26, 1973, six months prior to the effective date (July 26, 1973) of PL 325, Acts 1973, being Ind.Code § 35–4.1–1–3, Burns § 9–1204. That act provides:

\* \* \* \* \* \*

"If this statutory standard had been applicable at the time of petitioners' pleas, and if the record was identical to the one before us, petitioners would undoubtedly have presented a solid case for postconviction relief." Williams; *Williams v. State*, (1975) 263 Ind. 165 at 180, 325 N.E.2d 827 at 835.

"(4) That I would request and do hereby request a continuance in Cause No. 74–108, that being a criminal action alleging the offense of murder while perpetrating a kidnapping.

"(5) That I would further waive all rights and do hereby knowingly waive all rights to a trial setting under Criminal Rule of Procedure # 4.

"(6) That the State of Indiana would consent to a continuance in Cause No. 74–108 and that Cause No. 74–108 would not be set for trial unless one of the following conditions existed:

"(a) That I file a petition for post conviction relief under Cause No. 74–108 or Cause No. 74–109.

"(b) That I file an appeal in Cause No. 74–108 or Cause No. 74–109 or a motion to dismiss Cause No. 74–108.

"(c) That I escape from or be outside the jurisdiction of the Indiana State Department of Correction."

On appeal he contends that his guilty plea was rendered involuntary by coercive pressure brought to bear by the State's holding the additional charge in abeyance.

■ Ind.Code § 35–4.1–1–4(c) (Burns 1979) provides that "a plea of guilty shall not be deemed to be involuntary under subsection (a) of this section solely because it is the product of an agreement between the prosecution and the defense." Rather, the voluntariness of a guilty plea is judged by looking at all of the circumstances surrounding the entry of the plea. *Brady v. United States*, (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

■ At the guilty plea hearing the following discourse took place:

"Q. Is your mind free and clear at this time?

"A. Yes.

"Q. How far did you go in school?

"A. All the way.

"Q. In High School, you mean?

"A. Yes.

"Q. Is the plea that you are about to enter being made of your own free will?

"A. Yes.

"Q. Is it being made voluntarily?

"A. Yes.

"Q. Is it being made with a full understanding?

"A. Yes.

"Q. Has anyone made any promises to you or threatened you in any way to get you to plead guilty or not guilty to the crime charged?

"A. No.

"Q. The Court has heard that there is a negotiated plea?

"A. Yes.

"Q. And do you understand the terms of your negotiated plea?

"A. Yes.

"Q. And are they satisfactory with you?

"A. Yes."

in addition, the petitioner's attorney testified at the post conviction hearing that he had no doubt that the petitioner understood the agreement, the penalties provided and the charge to which he was pleading. The record clearly discloses that the petitioner's plea was entered freely and voluntarily, after his having consulted with counsel as to the attendant consequences.

■ We are aware of no authority to support the petitioner's contention that the pendency of other charges which are not to be disposed of by the plea bargain is indicative of coercion to induce the plea. The situation is not unlike those present in *McMahan v. State*, (1978) Ind., 382 N.E.2d 154 and *Bordenkircher v. Hayes*, (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. In *McMahan* we said "Thus the Prosecutor's conduct was simply a justifiable exploitation of legitimate bargaining leverage."

ISSUE III

Petitioner contends that he was not provided with adequate representation by his trial counsel who allegedly misinformed him as to the charge to which he was pleading guilty, and as to the time he would spend in prison. At the post conviction hearing, petitioner testified that he thought that he

was pleading guilty to being an accessory after the fact of murder. Further, he stated that his attorney, James Flemming, had advised him that although he would receive a life sentence, he would be released from prison in ten years.

James Flemming's testimony at the hearing was in direct contradiction to the petitioner's account, as was the record of the guilty plea hearing. Flemming testified that he explained the applicable statutes and penalties to the petitioner, as well as the plea agreement itself, and that in his opinion the petitioner understood that he was entering a plea of guilty to felony murder. With regard to the petitioner's sentence, Flemming testified:

> "Then the question was raised, I think by Charles or myself, I don't recall, as to whether or not if Charles went from one life conviction, he would be eligible for parole, I didn't know the answer, I went back in the Judge's Chamber and I telephoned the Department of Corrections and they informed me, that there is no parole for a life sentence, but after ten years a person can go before the Clemency Commission Board, or whatever, I explained that to Charles, I told him that after ten years, he would be eligible to take his case before the Clemency Board and we talked then in terms of what he should do between now and then to convince that Board that he might be eligible at that time to get out and the plea bargain specified that, even though the other cases were still pending, as long as he was within the jurisdiction of the Department of Corrections, there was nothing to prohibit that and we talked about in in terms of reversing his life I talked in terms of him being, someone who could do something between now and then and possibly in ten years the Clemency Board would consider him to be released and that is what we talked about.
>
> "Q. Were there any promises made by you at that time with respect to when he would be released in anyway shape or form?
>
> "A. I couldn't make any promises, I didn't know.

> "Q. Now, during the proceedings itself, was alternately negotiated and agreed that he would enter a plea to Felony Murder?
>
> "A. That was your offer, that was the offer that I gave him and that was eventually, the plea that was entered.
>
> "Q. Now, I think there has been some confusion about the issue of Accessory or Aiding and Abetting in this case, relative to the Felony Murder case, did you have a conversation with him relative to Aiding, Abetting, and Accessory Before the Fact and Felony Murder.
>
> "A. Yes.
>
> "Q. Can you in sum and substance, tell us what that was?
>
> "A. Well, the charge of Felony Murder, was the charge of killing Mrs. Fivecoate and the perpetration of a robbery, and the evidence that was going to be presented to this Court on the prima facie case, which the State is required to make, would have been that Ralph was the person that killed Mrs. Fivecoate and that Charles was an accessory to the robbery, that was the evidence as it went into this Court, that is what the record consists of, I explained to Charles as best that I could, that there are no differentiations between accessory and principle in the charging affidavit, the principle or the accessory are charged the same, but the evidence that came into this Court shows that he was not the person who killed Mrs. Fivecoate, it was Mr. Murphy and in that regard, he was an accessory to it and that is the evidence we talked about that would eventually go before the Board."

■■■ In a post conviction hearing, the burden of proof rests with the petitioner to establish his grounds for relief by a preponderance of the evidence. Post Conviction Remedy Rule 1, § 5. The trial judge is the

sole judge of the credibility of the witnesses and the weight of the evidence. His determination will be set aside only where it can be shown that the evidence is without conflict and leads unerringly to a result other than that reached by the trial court. *Carroll v. State*, (1976) Ind., 355 N.E.2d 408.

The petitioner has failed to sustain his burden on any of the issues before us today. We therefore, find no error in the trial court's denial of his petition for post conviction relief.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.