**Charles E. LOCKERT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 25A03–9810–CR–449.

Court of Appeals of Indiana.

June 23, 1999.

Darnail Lyles, Meyer, Lyles & Godshalk, P.C., Gary, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. Cause Number 74–109 is now Cause Number 25C01–7410–CR–00109.

2. Cause Number 74–108 is now Cause Number 25C01–7410–CF–00108.

## OPINION

STATON, Judge

Charles E. Lockert brings this interlocutory appeal from the denial of his third motion for speedy trial.

Lockert raises two issues on appeal, which we restate as:

I. Whether the trial court's denial of Lockert's third motion for speedy trial violated Ind.Crim. Rule 4(B)(1).

II. Whether Lockert's right to a speedy trial under Article I, § 12 of the Indiana Constitution or the Sixth Amendment of the U.S. Constitution has been violated.

We affirm and remand with instructions.

In August, 1974, Lockert was charged with first degree murder, felony murder, accessory after the fact of felony murder, and murder while perpetrating a kidnaping. The first three charges were filed under Cause Number 74–109[1] and the murder while perpetrating a kidnaping charge was filed under Cause Number 74–108.[2] In February, 1975, Lockert and the State reached a plea agreement under which Lockert pleaded guilty to felony murder under Cause Number 74–109 and received a life sentence. The other charges under Cause Number 74–109 were dismissed.

In addition, the plea agreement provided that Cause Number 74–108 would be continued, per Lockert's request, unless and until Lockert (a) sought post-conviction relief; (b) appealed; or (c) escaped or left the jurisdiction of the Indiana Department of Correction. Lockert agreed to waive his rights under Crim. R. 4 with respect to the continued cause. Lockert filed a petition for post-conviction relief (PCR) in 1977 and a second PCR in 1991. Lockert has also filed two appeals[3] and a federal Habeas Corpus petition, none of which have been successful. The State has not sought a trial date for Cause Number 74–108.

3. Lockert's first appeal, from the denial of his first petition for post-conviction relief, is published at 271 Ind. 226, 391 N.E.2d 613 (1979). His second appeal, from the denial of his second petition for post-conviction relief, is published at 627 N.E.2d 1350 (Ind.Ct.App.1994).

On October 20, 1994, Lockert filed a motion for speedy trial pursuant to Crim. R. 4(B)(1) on the charge under Cause Number 74–108. The State objected to Lockert's motion. On November 4, 1994, Lockert filed a motion to dismiss the charge based on the State's failure to prosecute. Lockert's motion for dismissal was denied on December 7, 1994 and his motion for speedy trial was denied on December 16, 1994.

On October 30, 1995, Lockert filed a second motion for speedy trial pursuant to Crim. R. 4(B)(1). The State again objected. On February 8, 1996, Lockert again moved to dismiss the charge under Cause Number 74–108. The trial court denied Lockert's second motion for speedy trial on February 9, 1996 and his second motion for dismissal on March 14, 1996.

Lockert filed his third motion for speedy trial pursuant to Crim. R. 4(B)(1) on May 18, 1998. The trial court denied this motion on June 23, 1998. The trial court certified this interlocutory appeal on October 6, 1998. This Court accepted jurisdiction pursuant to App. R. 4(B)(6) on November 13, 1998.

## I.

### *Crim. Rule 4(B)(1)*

Lockert contends that the trial court was required to follow the provisions of Crim. R. 4(B)(1) and set his trial within seventy days

4. Crim. R. 4(B)(1) provides, in relevant part:

If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

5. We recognize that Paragraph 3 of the plea agreement, which states that Lockert "would not file an appeal or a petition for post-conviction relief with respect to Cause No. 74–109 or Cause No. 74–108," is arguably a waiver of post-conviction remedies. Plea provisions which waive the right to seek post-conviction remedies are void and unenforceable. *Majors v. State,* 568 N.E.2d 1065, 1067–68 (Ind.Ct.App.1991), *reh. denied, trans. denied.* However, the procedural history of this case reveals that the provision has never

of his motion or discharge him.[4] We disagree. Lockert's plea agreement states, in relevant part:

(4) That I would request and do hereby request a continuance in Cause No. 74–108, that being a criminal action alleging the offense of murder while perpetrating a kidnapping.

(5) That I would further waive all rights and do hereby knowingly waive all rights to a trial setting under Criminal Rule of Procedure # 4.

(Record 14–15). Lockert expressly waived his right to a trial setting or dismissal pursuant to the rigid time constraints of Crim. R. 4. Therefore, the trial court's refusal to set a trial date did not contravene Crim. R. 4(B)(1).[5]

## II.

### *Constitutional Speedy Trial Rights*

Crim. R. 4 is intended to implement the constitutional right to a speedy trial. However, the rule itself is not a constitutional guarantee, and the rule is not co-extensive with constitutional guarantees. *Shields v. State,* 456 N.E.2d 1033, 1036 (Ind.Ct.App. 1983). Lockert is entitled to a speedy trial under Article I, § 12 of the Indiana Constitution and under the Sixth Amendment of the U.S. Constitution, despite his waiver of rights under Crim. R. 4. In determining whether a

been enforced to restrict Lockert's rights. In fact, Lockert has previously filed two petitions for post-conviction relief and two appeals, none of which were denied on the basis of waiver. Too, we emphasize that this provision is separate and distinct from the provisions dealing with Lockert's desire for, and the State's acquiescence in, a continuance in Cause No. 74–108. Paragraph 4 of the plea agreement evidences Lockert's desire for a continuance in Cause No. 74–108. In paragraph 6, the State agreed to consent to Lockert's continuance unless Lockert appealed or filed a PCR petition in Cause No. 74–109. This language did not restrict Lockert's post-conviction rights. It merely imposed a condition on his ability to indefinitely postpone trial under Cause No. 74–108. Lockert was free to exercise his post-conviction rights at any time under this provision of the agreement. Thus, we conclude that Lockert's arguably unenforceable waiver of post-conviction remedies does not affect the validity of Lockert's waiver of Crim. R. 4 provisions.

defendant's constitutional right to a speedy trial has been violated under either constitution, Indiana and federal courts apply the ad hoc balancing test established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 385, 142 L.Ed.2d 318 (1998). The *Barker* analysis employs four factors: (1) the length of the delay; (2) the timeliness of the defendant's assertion of his right; (3) the reasons for the delay; and (4) prejudice to the defendant. *Id.* In analyzing these factors, the conduct of both the State and the defendant are weighed. *Harrell v. State*, 614 N.E.2d 959, 963 (Ind.Ct.App.1993), *reh. denied, trans. denied.*

■ The U.S. Supreme Court identified the length of the delay as "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Sturgeon v. State*, 683 N.E.2d 612, 616–17 (Ind.Ct.App.1997), *trans. denied,* (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). The charge of murder while perpetrating a kidnaping under Cause Number 74–108 has been pending against Lockert for approximately twenty-five years. A delay of twenty-five years is presumptively prejudicial. *See id.* at 616 (eighteen month delay presumptively prejudicial). Thus, we must inquire into the other factors: (1) the timeliness of Lockert's assertion of his right; (2) the reasons for the delay; and (3) prejudice to the defendant.

■ Lockert sought an indefinite continuance in the matter in February, 1975. Under the terms of the plea agreement, the State agreed to consent to this continuance unless Lockert (a) filed a petition for post conviction relief under Cause Number 74–109; (b) filed an appeal under Cause Number 74–109 or a motion to dismiss under 74–108; or (c) escaped or left the jurisdiction of the Department of Correction. Thus, under the terms of the agreement, the State was free to prosecute Lockert under Cause Number 74–108 at any time after he filed his first PCR petition in 1977. However, the State did not request a trial date and the cause remained pending pursuant to Lockert's original request. Lockert did not request a trial date until October, 1994, when he filed his first motion for speedy trial. Thus, the first twenty years of delay are attributable to Lockert.[6]

Lockert first asserted his desire for a speedy trial in October, 1994. He continued to assert his right to trial for the next forty-four months.[7] The State, on the other hand, consistently opposed the setting of a trial date, and the trial court, relying on Lockert's waiver of Crim. R. 4's protections, refused to set the matter for trial. Lockert did indeed waive his rights under Crim. R. 4; however, he did not waive his constitutional rights to a speedy trial. Although the trial court was technically correct in denying Lockert's Crim. R. 4 motions, the court should have proceeded to set a trial date. At the point when Lockert filed his first Crim. R. 4 motion, it was apparent that Lockert no longer desired the continuance he negotiated in his plea agreement. The delay in Lockert's trial after he first filed a Crim. R. 4 motion is appropriately chargeable to the State.

■ The delay for which the State is responsible, forty-four months, is substantially less than the delay attributable to Lockert. Nevertheless, the State's delay is a consider-

---

6. The dissent posits that the first twenty years of delay "could be attributed to the State's lack of reasonable diligence or negligence," since it could have prosecuted Lockert any time after he filed his first PCR in 1977. (Op. at 94, n. 11, Bailey, J., dissenting.) We disagree. When a defendant requests an indefinite continuance and later becomes dissatisfied that his trial has not been reset, he must take some affirmative action to notify the court that he now desires to go to trial. *Wheeler v. State*, 662 N.E.2d 192, 194 (Ind.Ct.App.1996). *Wheeler* dealt specifically with a defendant's rights pursuant to Crim. R. 4.

However, we believe the same analysis should apply here. Lockert sought a delay of his trial in 1975. This delay was to Lockert's advantage. Lockert finally sought a trial date in 1994, when it became apparent that delay was no longer to his advantage. We think it unwarranted to hold the State responsible for the first twenty years of delay under these circumstances.

7. The time period represents the period between October, 1994 and June, 1998, when Lockert's third motion for speedy trial was denied.

able length of time, which we must balance against the other factors, including prejudice to Lockert as a result of the State's delay.[8] Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation.[9] *Sweeney*, 704 N.E.2d at 103. Prejudice is assessed in light of the three interests that the right to a speedy trial is designed to protect: (1) to prevent oppressive incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* at 103 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.).

> Of these interests, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

Although both Lockert's and the State's ability to present their cases has undoubtedly been affected by the passage of twenty-five years, Lockert has not alleged any specific prejudice with respect to his ability to defend the charge against him. He has not asserted that witnesses are unavailable, memories have faded, or that evidence has been lost due to the delay. Further, even if Lockert had made such allegations, he would be required to demonstrate that the prejudice to his defense was a result of the State's delay and not of his own.

■■■ In addition to preventing impairment of an accused's defense, speedy trial guarantees also serve to prevent oppressive incarceration and to minimize anxiety and concern of the accused. *Sweeney*, 704 N.E.2d at 103. Generally, the oppressive incarceration that speedy trial guarantees are intended to prevent is pre-trial incarceration for the pending offense, not incarceration for other convictions. Lockert is not incarcerated under Cause Number 74–108; he is in prison as a result of his conviction under Cause Number 74–109.

The dissent correctly cites *Smith v. Hooey*, 393 U.S. 374, 378–79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), for the proposition that an accused incarcerated for another offense may also be subject to oppressive incarceration, anxiety and concern over the untried charge. (Opinion at 94–95, Bailey, J., dissenting). Further, we agree that the still-pending Murder charge under Cause Number 74–108 may be prejudicial to Lockert's application for parole under Cause No. 74–109. (Op. at 95). However, we cannot ignore the fact that Lockert sat on his rights, never seeking trial until he became eligible

8. In support of its argument that a forty-four month delay has not deprived Lockert of his speedy trial rights, the State argues that our supreme court has recently held that a comparable delay of thirty-nine months between arrest and trial was not a violation of the defendant's speedy trial rights. State's brief at 11 (citing *Sweeney*, 704 N.E.2d at 86 (Ind.1998)). The State's argument is misguided. In *Sweeney*, the court found that only 256 days of the thirty-nine month delay was chargeable to the State. 704 N.E.2d at 102–03.

9. The dissent points to our determination that a delay of twenty-five years is presumptively prejudicial and argues that we are incorrect, in light of this determination, to place the burden of proving actual prejudice on Lockert. However, our determination that twenty-five years is presumptively prejudicial is merely the triggering mechanism that requires our inquiry into the other factors, including actual prejudice to the defendant, set forth in the *Barker* analysis.

The dissent also relies on *Scott v. State*, 461 N.E.2d 141 (Ind.Ct.App.1984), for the proposition that we should presume that Lockert suffered actual prejudice. In *Scott*, the entire delay was attributed to the State and occurred between the filing of an information and Scott's arrest. Scott was wholly unaware of the pending charge for seven years. However, the court distinguished Scott's situation from one where " the defendant is aware he must face a charge of committing a crime on a particular date and, therefore, has the opportunity to avoid the particular prejudice of a memory fade or loss by making notes, identifying witnesses and memorializing their recollections, etc." *Id.* at 144. Here, Lockert was aware of the pending charge and, thus, was not denied the opportunity to avoid prejudice. Too, we cannot overlook the fact that Lockert sat on his rights for twenty years, thus, inviting prejudice during that time. Accordingly, we hold that Lockert must demonstrate actual prejudice as a result of the State's delay.

for parole under Cause Number 74–109 in 1994. Too, we cannot conclude that Lockert's anxiety and concern over the untried charge has prejudiced his ability to take advantage of his institutional opportunities. As the dissent points out, "Lockert's record and accomplishments while in the custody of the Department of Correction have been exemplary." (Op. at 95).

The State is responsible for forty-four months of delay in bringing Lockert to trial. While this is not an insubstantial length of time, we must balance it against Lockert's responsibility for the first twenty years of delay, Lockert's failure to assert his speedy trial rights until he became eligible for parole under Cause No. 74–109, and Lockert's failure to demonstrate actual prejudice beyond the prejudice to his application for parole. After consideration of all of these factors, we conclude that Lockert has not demonstrated that the State has deprived him of his constitutional right to a speedy trial.

We wish to emphasize, however, that we can discern no valid reason for the State to have delayed the trial as it has done here. Lockert has a constitutional right to a speedy trial. Lockert has asserted that right and is entitled to a trial at the earliest available date.

We affirm and remand with instructions to the trial court to set Cause Number 74–108 for trial.

FRIEDLANDER, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting,

I respectfully dissent. The right of an accused to a speedy trial is a fundamental principle of constitutional law guaranteed by the Sixth Amendment to the United States Constitution and by Article I, § 12 of the Indiana Constitution. *Crawford v. State*, 669 N.E.2d 141, 145 (Ind.1996); *Clark v. State*, 659 N.E.2d 548, 551 (Ind.1995). The most fundamental consideration underlying the right to a speedy trial is that the State can neither incarcerate an accused, nor hold a pending charge over the defendant's head, indefinitely. *Poore v. State*, 685 N.E.2d 36, 40 (Ind.1997). In other words, no Hoosier will be compelled to live with a Damoclean sword dangling over his head. *See Woods v. State*, 583 N.E.2d 1211, 1212 (Ind.1992).

The onus is on the State, not the defendant, to expedite prosecution. *Jackson v. State*, 663 N.E.2d 766, 769 (Ind.1996). The State has the duty to bring the defendant to trial as well as the duty of insuring that the trial is consistent with due process. *Id.; see also Crawford,* 669 N.E.2d at 145 (undue delay and resultant prejudice may constitute a violation of due process under the Fourteenth Amendment independent of a claim of a violation of speedy trial rights). While a delay resulting in presumptive prejudice cannot alone carry a Sixth Amendment claim, it is part of the ad hoc balancing test established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and its importance intensifies with the length of the delay. *Harrell v. State*, 614 N.E.2d 959, 965 (Ind.Ct.App.1993), *trans. denied.*

The provision in Lockert's plea agreement which provided that he waive his right to seek post-conviction relief was void and unenforceable as against public policy. *See Majors v. State*, 568 N.E.2d 1065, 1067–68, *trans. denied.* Obviously, this provision was not enforced against Lockert as he pursued post-conviction remedies in the late 1970s. *See Lockert v. State*, 271 Ind. 226, 391 N.E.2d 613, 615–16 (1979), *cert. denied*, 493 U.S. 897, 110 S.Ct. 251, 107 L.Ed.2d 201. Thus, this case involves the continued or independent viability of Lockert's request for a continuance and his waiver of C.R. 4 rights. While standing alone, there may be nothing inherently illegal about an agreement for indefinite continuances or the waiver of C.R.4 rights,[10] the State nevertheless has an affir-

---

10. However, the applicability of the rule prohibiting the enforcement of terms in plea agreements which purport to waive a defendant's right to review does not turn on fine distinctions between whether the operative terms in the plea agreement are express or implied. *See People v. Ledrow*, 53 Mich.App. 511, 220 N.W.2d 336, 337, 339–40 (1974) (condemning prosecutor's practice of entering into plea agreements which called for the dismissal of remaining charges to

mative duty to insure that delay does not prejudice the defendant's speedy trial and due process rights.[11] *Crawford v. State,* 669 N.E.2d 141, 145 (Ind.1996).

The majority holds that the delay, however calculated, is presumptively prejudicial. (Op. at 91–92). Nevertheless, the majority places the burden on Lockert to demonstrate actual prejudice. (Op. at 92). This is incorrect. As stated in *Scott v. State,* 461 N.E.2d 141 (Ind.Ct.App.1984):

> There is a general presumption against the mere passage of time as prejudicing a defendant. It is for this reason Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation. However, a delay may be so prolonged the general presumption must fail and be replaced by a presumption of prejudice. The basis for this contrary presumption of prejudice is the prolonged delay itself deprives the defendant of the ability to prove prejudice.... At some point, then, we presume the defendant suffered actual prejudice....

(citations omitted). In *Sweeney v. State,* 704 N.E.2d 86, 103 (Ind.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 385, 142 L.Ed.2d 318, cited by the majority for the proposition that

take effect only after the time for taking an appeal had expired); *People v. Ramos,* 30 A.D.2d 848, 292 N.Y.S.2d 938, 939–40 (1968) (setting aside a plea agreement where prosecutor's promise to dismiss a pending robbery charge would not stand if defendant initiated an appeal from his conviction within thirty-one days after sentencing). Thus, the legality and enforceability of Lockert's agreement to an indefinite continuance and waiver of C.R. 4 rights is suspect because these terms were used in an attempt to enforce the illegal waiver of post-conviction rights.

11. In the present case, the plea agreement purportedly prohibited the State from prosecuting Lockert only so long as he did not pursue post-conviction relief from his Murder conviction. *See Lockert,* 391 N.E.2d at 616. Lockert breached the agreement, and triggered the State's ability to prosecute him on the pending charge, when, in the late 1970s, he filed for post-conviction relief. Ever since that time, the State has been under no obligation to honor Lockert's earlier request for a continuance and has had absolutely no excuse for not bringing Lockert to trial. Considering that the State has an affirmative

the burden of demonstrating actual prejudice is on the defendant, our supreme court held:

> [b]ecause we do not find that the delay in bringing defendant to trial was excessive, the ... standard of 'presumptive prejudice' is not applicable.

(citation omitted); *See also Lahr v. State,* 615 N.E.2d 150, 153 (Ind.Ct.App.1993).

However, these concerns, while ordinarily important to a speedy trial analysis, are of are of little importance here because Lockert has demonstrated actual prejudice. As noted by the majority, prejudice is assessed in light of the three interests which the right to a speedy trial is designed to protect: (1) to prevent oppressive incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Op. at 92, citing *Sweeney,* 704 N.E.2d at 103. As stated in *Smith v. Hooey,* 393 U.S. 374, 378–79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969):

> At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried

duty to bring an accused to trial, the *last* twenty years of delay could be attributed to the State's lack of reasonable diligence or negligence requiring dismissal without regard to whether Lockert can demonstrate actual prejudice. *See Doggett v. United States,* 505 U.S. 647, 655–56, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (8½ year delay attributable to the government's negligence violated defendant's speedy trial rights even though the defendant could not demonstrate exactly how the delay had prejudiced him); *Harrell,* 614 N.E.2d at 964, 967 (specifically demonstrable proof of particularized prejudice is not essential to every speedy trial claim).

Incidentally, to clarify, I would hold that it is the *last, most recent* twenty years of delay, measured from the time Lockert filed his post-conviction petition which repudiated the agreement to postpone the pending prosecution, for which the State must bear at least some of the responsibility, not the *first* twenty years as stated by the majority at slip op. —— n. 6. Moreover, of these last twenty years, the majority concedes that the last forty-four months of delay, measured from when Lockert first requested a trial in 1994, are entirely attributable to the State.

charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. *Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.*

And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. In the opinion of the former Director of the Federal Bureau of Prisons,

> '[i]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being [imprisoned upon a pending charge] at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.'

(emphasis added; citations and footnotes omitted).[12]

Lockert began serving a life sentence in 1974. Therefore, he became eligible for parole in 1994, after serving twenty years. *See* IND.CODE § 11–13–3–2(3); *Hendrix v. Duckworth*, 442 N.E.2d 1058, 1060 (Ind.1982). Lockert started requesting a trial in 1994. The uncontradicted evidence shows that Lockert's record and accomplishments while in the custody of the Department of Correction have been exemplary, but that, the Indiana Parole Board has refused to grant him parole, at least in part, on the basis of the

pending Murder charge. (R. 54). Regardless of the weight to be given to this uncontradicted evidence, it is axiomatic that the mere existence of a pending Murder charge would, as a matter of law, be prejudicial to an application for parole. Accordingly, Lockert has demonstrated prejudice from the State's delay in bringing him to trial.

### Conclusion

Based on the above, I vote that we reverse and remand with instructions that the pending charges be dismissed with prejudice. *See Strunk v. United States*, 412 U.S. 434, 439–40, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) (the only possible remedy for the violation of a defendant's speedy trial rights is the vacation of any judgment and the dismissal of the indictment).

---

**12.** These two factors should carry added weight in the Indiana courts because of our constitution's mandate that our penal code be founded on the principles of reformation, and not of vindictive justice. Ind. Const. Art. I, § 18.