Charles HAMPTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0103–CR–141.

Court of Appeals of Indiana.

Sept. 13, 2001.

Gregory Bowes, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a bench trial, Charles Hampton was convicted of two counts of interference with custody,[1] a Class B misdemeanor, and one count of educational neglect of a dependent,[2] a Class D felony. He now appeals, raising the following issues for review:

I. Whether he should have been discharged pursuant to Indiana Criminal Rule 4(B), the Sixth Amendment to the United States Constitution, or Article I, § 12 of the Indiana Constitution when he was not tried until seventy-nine days after he filed a written motion for a speedy trial.

1. *See* IC 35–42–3–4.

2. *See* IC 35–46–1–4.

II. Whether the State presented sufficient evidence to support his conviction of educational neglect of a dependent where Hampton asserts that he was home schooling his child.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Hampton and Tina Hampton were married and had two children, M.C.H. and K.H. Upon their divorce in 1999, Tina was awarded custody of the children, and Hampton was awarded visitation pursuant to the county guidelines and at other times as agreed by the parties.

On July 4, 2000, Tina delivered the children to Hampton for an extended summer visit. Hampton was to return the children on July 30 or 31, 2000 but failed to do so. Although the school year started for the schools in which Tina had enrolled M.C.H. and K.H., Hampton failed to send the children to school. On September 19, 2000, police officers went to Hampton's home and removed the children. He was arrested and charged with two counts of interference with custody, two counts of educational neglect of a dependent for failing to send the children to school, and two counts of neglect for confining the children indoors.

On October 31, 2000, Hampton filed a written motion for speedy trial. Shortly thereafter, he changed counsel. At a pretrial conference on November 28, 2000, Hampton's new counsel orally moved for speedy trial by stating "if that hasn't been done, [Hampton] is asking that be done now." *Transcript* at 178. The trial court then set the trial date for January 18, 2001 without objection.

After the bench trial, he was convicted of two counts of interference with custody and one count of educational neglect. He now appeals.

## DISCUSSION AND DECISION

Hampton first alleges that he should have been discharged because his right to speedy trial was violated.

▋ Ind.Crim. Rule 4(B) provides that a criminal defendant held in jail must be tried within seventy calendar days if he moves for speedy trial. Hampton has waived this claim. A defendant must object at the earliest opportunity when his trial is set beyond the time limitations of Crim. R. 4. *Townsend v. State*, 673 N.E.2d 503, 506 (Ind.Ct.App.1996). If an objection is not timely made, the defendant is deemed to have acquiesced to the later trial date. *Id.* The defendant's obligation to call to the trial court's attention a trial date which had been set outside the time frame allowed by Crim. R. 4(B) is recognized because the purpose of the rules is to assure early trials, not discharge defendants. *Id.*

In *Townsend*, 673 N.E.2d at 506, the defendant orally requested a speedy trial at his initial hearing. At the initial hearing, the trial court set a trial date seventy-one days from the defendant's request. The defendant failed to object to the trial court's setting of the trial date which fell outside of the seventy-day period. We held that because the defendant failed to object at the earliest opportunity, he acquiesced to the later trial date, and he was not entitled to discharge. We noted that an earlier objection would have allowed the trial court to reset the trial for a date within the proper period. *Id.*

▋ Hampton first filed a written motion for speedy trial on October 31, 2000. He then changed counsel. At a pretrial conference on November 28, 2000, Hampton's new counsel orally moved for a speedy trial if Hampton's previous counsel had not already done so. The trial court then, without objection, set the trial date

for January 18, 2001, outside the seventy-day limit prescribed by the rule. Hampton took no action to bring the trial court's error to its attention, which would have allowed it to take corrective action. Hampton has therefore waived this error for appellate review. *See Driver v. State,* 725 N.E.2d 465, 470 (Ind.Ct.App.2000) (no trial court error in failing to discharge defendant who had moved for a speedy trial even though he was tried outside the seventy-day limit where defendant did not object to the trial date setting when the trial court scheduled that setting; defendant abandoned his request at that time).

■ Further, the defendant waives review of this issue on appeal if he does not make a motion for discharge or motion for dismissal prior to trial. *Sundling v. State,* 679 N.E.2d 988, 991 (Ind.Ct.App.1997). Such a request provides an enforcement mechanism for Crim. R. 4(B) and a defendant's failure to attempt to enforce his request for a speedy trial waives any issue thereon. *Id.* There is no indication in the Record that Hampton moved for discharge or dismissal prior to trial. Therefore, his claim is waived.

Hampton also alleges that his constitutional right to a speedy trial was violated. The Sixth Amendment to the United States Constitution guarantees every accused person the right to a speedy trial. Also, Article I, § 12 of the Indiana Constitution provides that justice shall be administered "speedily and without delay."

■ In reviewing claims of speedy trial rights, Indiana and federal courts apply the analysis established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Sweeney v. State,* 704 N.E.2d 86, 102 (Ind.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). The *Barker* analysis employs four factors: (1) length of delay, (2) defendant's assertion of his right, (3) the government's reason for the delay, and (4) the prejudice to the defendant. *Id.*

■ The length of the delay is to some extent a triggering mechanism. *Lockert v. State,* 711 N.E.2d 88, 91 (Ind.Ct. App.1999). Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. *Id.* A post-accusation delay exceeding one year has been termed "presumptively prejudicial" to a defendant and triggers the *Barker* analysis. *Vermillion v. State,* 719 N.E.2d 1201, 1206 (Ind.1999) (citing *Doggett v. U.S.,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520, 528 n. 1); *Danks v. State,* 733 N.E.2d 474, 481 (Ind.Ct.App.2000), *trans. denied. See also Sturgeon v. State,* 683 N.E.2d 612, 616 (Ind.Ct.App.1997), *trans. denied.*

■ Here, the length of the delay between accusation and trial was 113 days. Our research has disclosed no reported Indiana case in which a time period less than one year was held to have triggered the *Barker* analysis. *See, e.g., Sauerheber v. State,* 698 N.E.2d 796, 805 (Ind.1998) (delay from arrest to trial of one year triggered analysis); *Lahr v. State,* 615 N.E.2d 150, 152 (Ind.Ct.App.1993) (eighteen-month delay triggered analysis). We hold that under the circumstances of this case, a 113 day delay is not presumptively prejudicial such that the *Barker* analysis is triggered. Hampton's constitutional right to a speedy trial was not violated.

Hampton next contends that the State presented insufficient evidence to support his conviction for neglect of a dependent. His conviction is based on his failure to send M.C.H. to school. Hampton asserts that he was home schooling M.C.H. and was therefore not violating the law because he was providing M.C.H. an education.

When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Hamilton v. State*, 694 N.E.2d 1171, 1172 (Ind.Ct.App.1998). We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which the factfinder could find the defendant guilty beyond a reasonable doubt. *Id.*

IC 35–46–1–4(a), the statute defining educational neglect, provides: "A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally ... deprives the dependent of education as required by law [ ] commits neglect of a dependent, a Class D felony." The State introduced evidence that M.C.H. had not been attending classes at the public school at which Tina had enrolled him.

Hampton points to *Hamilton*, 694 N.E.2d at 1173, in which this court reversed the convictions of a mother for educational neglect where the evidence showed only that her children had several unexcused absences from school. There, we held that the State is required to prove more than a person's violation of the compulsory attendance law to convict that person of felony neglect. Rather, the neglect of a dependent statute requires that a child be deprived of an "education as required by law." *Id.*

 However, *Hamilton* involved a custodial parent. Here, Tina, not Hampton, was the custodial parent. The custodial parent has the right to make educational decisions for the child. *Neudecker v. Neudecker*, 577 N.E.2d 960, 962 (Ind. 1991). Therefore, the education required by law in this case is the education selected for M.C.H. by his custodial parent, which is the public school in which he was enrolled. There is ample evidence that M.C.H. did not attend the public school

while at Hampton's home. Thus, there is sufficient evidence to support Hampton's conviction for educational neglect.

Affirmed.

BAILEY, J., and BROOK, J., concur.