NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 17, 2008[*]
Decided July 22, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-3453

| | |
|---|---|
| BILLIE R. ADAMS, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
|     *v.* | |
| | No. 1:06-cv-1499-SEB-JMS |
| CHRISTOPHER E. MELOY, | |
|     *Defendant-Appellee*. | Sarah Evans Barker, |
| | *Judge*. |

**O R D E R**

Billie R. Adams is an Indiana prisoner who has been serving a life sentence since 1972 for first-degree murder of a police officer. He filed a complaint against the Chairman of the Indiana Parole Board, currently Christopher Meloy, pursuant to 42 U.S.C. § 1983, challenging his denial of parole. The district court granted the defendant's motion to dismiss the complaint for failure to state a claim. We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

According to Adams's complaint, he filed five clemency petitions before 1992, all of which were denied. That year marked the completion of the first 20 years of his sentence, and Adams then became eligible for parole and had annual parole hearings from 1992 to 1996. In 1996 Indiana changed its policy on the frequency of parole hearings, and since then Adams has appeared before the board once every five years, or in 2001 and 2006.

Adams's complaint charged that parole board members violated his right to due process when they arbitrarily denied him parole. According to Adams, the board ignored evidence of his good behavior and educational achievement, as well as his suffering from post-traumatic stress disorder (PTSD), and instead focused their attention on other, unproved offenses from his past and even false information. He asserts that the board's denial of parole "based on the nature and circumstances of" his offense, killing a police officer, demonstrates the members' bias against him. Next, Adams argued that his rights under the equal protection clause were violated because the parole board granted the parole applications of similarly situated offenders but arbitrarily denied his applications. Adams also alleged that the change in Indiana's parole eligibility procedures violated the ex post facto clause of the Constitution because he now has to wait longer in prison before being considered for parole. Adams sought only injunctive relief in the form of a new parole hearing and an order that he be resentenced under the new parole policy.

The district court granted Meloy's motion to dismiss for failure to state a claim. The court concluded that even if Adams had a right to judicial review of the parole board's actions, any such review would not be more demanding than an "exceptionally arbitrary" standard and that the actions of the parole board would easily satisfy that standard. The court observed that the parole board considered Adams's application for parole in accordance with the governing statute, issued written decisions explaining its reasoning, and had discretion to make such determinations under Indiana law. Furthermore, the district court concluded that Adams had not stated a claim under the equal protection clause because he is not a member of a protected class, nor could he be considered a "class of one." Finally, the district court determined that there was no violation of the ex post facto clause because the change in parole policy had not altered statutory parole eligibility standards. Moreover, the district court concluded, when Adams was sentenced in 1972 Indiana did not provide any parole eligibility for people serving life sentences.

On appeal Adams repeats the three primary arguments stated in his complaint. We review the district court's ruling on the motion to dismiss de novo. *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). First, Adams contends that he stated a claim under the due process clause when he asserted that the parole board abused its discretion and denied him fair treatment at his parole hearings. Adams complains that the parole board questioned him about offenses of which he has never been convicted. Adams also charges that the

board ignored information about his PTSD or used it against him. He accuses the parole board of "faking" the deliberative process and of fulfilling a promise it made to his victim's family never to let him out on parole. And Adams believes that the parole board is biased against him because his offense involved killing a police officer.

Meloy responds that "the federal due process clause does not apply to parole release decisions in Indiana because there is no right to parole release," and he cites in support *Huggins v. Isenbarger*, 798 F.2d 203, 205 (7th Cir. 1986), and *Averhart v. Tutsie*, 618 F.2d 479, 482 (7th Cir. 1980). While it is certainly true that an Indiana inmate serving a sentence is not entitled to an early release, see *Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006) (analyzing Wisconsin parole release system, which is substantially the same as Indiana's system), such an inmate "should not be denied parole for false, insufficient, or capricious reasons," which is essentially what Adams alleges happened to him, see *Christopher v. U.S. Bd. of Parole*, 589 F.2d 924, 928 n.8 (7th Cir. 1978). Nevertheless, we are convinced that Adams has pleaded himself out of court with respect to this claim. Adams's complaint gives many examples of what he claims are instances of bias and false information by the parole board members, yet none of his examples comes close to substantiating his allegations. For instance, in making its parole determinations, the parole board is entitled to rely on evidence of other crimes and on the nature and circumstances of the offense of conviction. See *Grennier*, 453 F.3d at 445; *Walker v. Prisoner Review Bd.*, 769 F.2d 396, 401 (7th Cir. 1985). Moreover, we have held that "any due process violation caused by the presence of false or prejudicial information in a prisoner's parole file is remedied by the prisoner's right to review and respond to the objectionable material," *Mosley v. Klincar*, 947 F.2d 1338, 1341 (7th Cir. 1991) (citing *Walker*, 769 F.2d at 401), and Adams acknowledges that he had an opportunity to be heard and respond at the parole hearings.

Next Adams argues that his rights under the equal protection clause were violated. He contends that by singling him out for unfair treatment because he killed a police officer, the parole board placed him in a "class of one." See *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2148-2149 (2008); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This claim has no merit. The parole board's inherent discretion necessitates that some prisoners will receive more favorable treatment than others. Adams's "class of one" argument also fails because he states that about 100 other prisoners serving life sentences have also been denied parole—therefore other similarly situated prisoners are receiving the same treatment as he is. See *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.").

Finally Adams argues that the change in the frequency of his parole hearings and the addition of victims' notification laws (VNLs) violated the ex post facto clause. He asserts

that when he was convicted he was eligible for parole and that his sentence has always been subject to adjustment through the parole process. See *Johnston v. Dobeski*, 739 N.E.2d 121, 125 (Ind. 2000). Furthermore, according to Adams, the VNLs that were enacted after his conviction, which provide for public parole hearings, so strongly prejudice him that they effectively increase his time in prison.

We note that both parties have devoted many pages in their briefs to the issue of parole eligibility at the time of Adams's conviction, and they have cited conflicting authority on the issue. Compare *Lockert v. State*, 271 Ind. 226, 232 (Ind. 1979); *Jennings v. State*, 270 Ind. 699, 703 (Ind. 1979); *Stuck v. State*, 259 Ind. 291, 293 (Ind. 1972); *White v. Indiana Parole Bd.*, 713 N.E.2d 327, 332 (Ind. Ct. App. 1999), indicating that there was no parole eligibility for prisoners serving life sentences prior to 1979, with *Dobeski*, 739 N.E.2d at 125, stating that such eligibility did exist. We take no position on this issue of state law, and we find that the resolution of this debate is not necessary to decide Adams's claim because federal law clearly indicates that his claim has no merit. A law violates the ex post facto clause only "if it punishes as criminal conduct an act that was innocent when done, or makes more burdensome the punishment for a crime after its commission." *O'Grady v. Libertyville*, 304 F.3d 719, 723 (7th Cir. 2002). The changes in Indiana's parole procedures did not alter the statutory punishment for the crime (life in prison) or the standards for determining the initial date for parole consideration (after 20 years of serving time) or change the standards for determining a prisoner's suitability, set out in IND. CODE § 11-13-3-3 and 220 IND. ADMIN. CODE 1.1-2-3. See *Garner v. Jones*, 529 U.S. 244, 250 (2000) (upholding Georgia administrative regulation changing frequency of parole hearings for prisoners serving life sentences from every three years to every eight years against ex post facto challenge); *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995) (holding that there was no ex post facto violation when California changed frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one homicide). Finally, we have explicitly held that the retroactive application of VNLs does not implicate the ex post facto clause. See *Mosley*, 947 F.2d at 1340.

AFFIRMED.