## FOR PUBLICATION



FILED
Sep 18 2013, 5:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTINA J. JACOBUCCI**
Newby Lewis Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARIO A. ALLEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 46A04-1203-CR-143 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LA PORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-0306-FB-72

**September 18, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Mario A. Allen (Allen), appeals his conviction for Count I, attempted robbery, a Class B felony, Ind. Code §§ 35-42-5-1; -41-5-1; Count II, robbery, a Class B felony, I.C. § 35-42-5-1; and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Allen raises three issues which we restate as follows:

(1) Whether the trial court abused its discretion when it admitted and excluded certain evidence;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction for attempted robbery and robbery; and

(3) Whether Allen's right to a speedy trial was violated.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict are the following. On the evening of January 15, 2003, Cortez Crawford (Crawford) and Dennis Harmon (Harmon) were at Harmon's house, playing videogames in his room. While there, they received a phone call from Anthony Usmanmanaga, a.k.a. Black. After Harmon spoke with Black on the phone, he informed Crawford that Black would stop by with a friend. Later that evening, Black and Allen arrived at Harmon's house, driving a blue four-door Honda Accord. The four men decided to go to Chicago to "just party." (Transcript p. 11). However, Black

2

informed Crawford and Harmon that, prior to going to Chicago, they were going to "hit a lick," *i.e.*, commit a robbery, and asked Harmon to retrieve the gun from inside the house. (Tr. p. 12). Harmon returned with a sawed-off shotgun.

Shortly before 10:30 p.m., the four men arrived at the local Marathon gas station. After waiting a few minutes for other customers to leave, Black and Allen exited the car wearing masks. Allen wore a "Scream" mask and Crawford's blue hoodie, while Black wore a hockey "Jason" mask and carried the shotgun. (Tr. p. 18). Meanwhile, Harmon and Crawford moved into the front seat of the car. Marathon gas station's clerk, Palwinder Ghotra (Ghotra), noticed the men exit the car, got scared, and armed himself with a hammer. After Black and Allen entered the gas station, Black pointed the gun at Ghotra and demanded money, threatening to kill him. Ghotra told Black and Allen that he did not have any money. Ghotra became angry, started waving and pounding the hammer around, and chased Black and Allen out of the store. Black and Allen ran back to the car. While Black was still trying to get into the car, Harmon started to drive away. After Black managed to get into the car, Black and Allen started laughing, informing Crawford and Harmon that they had not gotten any money and had nearly been hit with a hammer.

Donnie Smith (Smith), who was stopped at the intersection near the Marathon gas station, noticed the three men inside the store: two men were facing the third, who was waving something around. He saw the two men, who were wearing masks, run out of the store while being chased by the third man. He noticed that the two masked men climbed

3

into a blue Honda, which started to drive away while the second man was still trying to climb in.

After driving away, Black informed the three other men that he knew another place they could try to rob and he told Harmon to drive to the Easy Food Mart. After arriving at the Easy Food Mart around 10:45 p.m., Allen told Black to let him carry the gun this time. They entered the store, each wearing the same masks as before. Easy Food Mart's owner, Zahed Jafri (Jafri), was about to close the store for the night when the two masked men came into the store, one of them pointing a gun at him, and demanded money. Jafri gave them all the money from the cash register, as well as the lottery money. When Allen and Black returned to the blue Honda, they told Harmon to "pull off." (Tr. p. 28).

When Harmon started driving, Allen and Black counted the money. Black gave everyone one hundred dollars. On their way to Chicago, they stopped at a gas station in Matteson, Illinois, to buy some snacks. After determining that they could not spend the night at Allen's house, they drove to a hotel in Matteson.

At approximately 1 a.m., Matteson police officer Michael Zurro (Officer Zurro) encountered a blue Honda with four men inside. Officer Zurro ran the vehicle's license plate, which came back as registered to an Oldsmobile and which had been reported as stolen. While calling for back-up, Officer Zurro continued to follow the car, which drove to a Matteson hotel. After parking the car in the hotel's parking lot, the four men exited the car and went inside the hotel lobby where they rented two rooms. When the men exited the hotel lobby, they were placed under arrest. Inside the car, the officers found

4

the scream mask and the Jason mask. The sawed-off shotgun was located in the vehicle's trunk.

On June 26, 2003, the State filed an Information charging Allen with Count I, attempted robbery, a Class B felony, I.C. §§ 35-42-5-1; -41-5-1; and Count II, robbery, a Class B felony, I.C. § 35-42-5-1. On November 6, 2003, the State amended the Information, adding Count III, habitual offender, I.C. § 35-50-2-8. On September 18, 2003, the trial court conducted an initial hearing during which Allen requested a speedy trial, which was granted over Allen's counsel's objection and a trial date was set for November 17, 2003. On October 10, 2003, Allen, by counsel, filed a motion to vacate the trial date and remove the speedy trial request because he needed more time to prepare. The trial court granted the motion and vacated the trial date. On March 29, 2004, during the pre-trial conference, the State requested a continuance, which was granted over Allen's objection, setting a new trial date of May 24, 2004.

On May 24 through May 27, 2004, a jury trial was conducted. At the close of the evidence, the jury found Allen guilty as charged. On June 24, 2004, the trial court sentenced Allen to fifteen years on the attempted robbery conviction, enhanced by thirty years for the habitual offender adjudication, and a concurrent fifteen-year sentence on the robbery conviction. On July 20, 2004, Allen timely initiated a direct appeal but, after indigent counsel was never appointed for him despite an appellate court order to do so, the appeal was dismissed in September of 2005 for failure to prosecute. On December 29, 2011, after post-conviction relief proceedings, this court concluded that Allen was denied his right to the assistance of counsel during his direct appeal and ordered the

reinstatement of Allen's direct appeal. *See Allen v. State*, 959 N.E.2d 343 (Ind. Ct. App. 2011). On December 6, 2012, we granted Allen's motion for a belated direct appeal.

Allen now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Admission of Evidence*

Allen contends that the trial court abused its discretion in admitting certain evidence and excluding certain other evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *Id.* Moreover, any error caused by the admission of evidence is harmless error for which we will not reverse if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id.* Specifically, Allen claims that the trial court improperly admitted State's Exhibit 7, Allen's arrest report, and State's Exhibit 16, Crawford's handwritten statement to the police. Additionally, he alleges that the trial court abused its discretion when it excluded Allen's proffered evidence, a receipt from the Flash Cab taxi company. We will discuss each allegation in turn.

A. *State's Exhibit 7*

6

With respect to State's Exhibit 7, which encompasses Allen's arrest report, Allen asserts that the report itself was hearsay and consists of "hearsay within hearsay" prejudicial to Allen's case. (Appellant's Br. p. 17). Allen claims that the report must be characterized as an "investigative report by police and other law enforcement personnel" and as such should be excluded pursuant to Indiana Evidence Rule 803(8).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Typically, hearsay is not admissible except when provided by law or by other court rules. Evid. R. 802. One exception to the hearsay rule is for "public records and reports," which provides:

> Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or date compilations in any form, of a public office or agency, setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and (d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Evid. R. 803(8). This hearsay exception is based on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports. *Fowler v. State*, 929 N.E.2d 875, 878 (Ind. Ct. App. 2010), *trans. denied*.

As noted, the public records exception to the hearsay rule expressly excludes investigative police reports when offered against the accused in criminal trials. "The reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." *Id*. at 879. However, this exclusion does not bar admission of police records pertaining to "routine, ministerial, objective nonevaluative matters made in non-adversarial settings." *Id*. "Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter . . . , such records are, like other public documents, inherently reliable." *Id*. (quoting *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985)). Accordingly, courts have held that the public records exception permits admission of police records created in connection with routine booking procedures. *Fowler*, 929 N.E.2d at 879. "The rote recitation of biographical information in a booking sheet ordinarily does not implicate the same potential perception biases that a subjective narrative of an investigation or an alleged offense might." *Id*. (quoting *United States v. Dowdell*, 595 F.3d 50, 72 (1st Cir. 2010)).

Although Allen refers to State's Exhibit 7 as an arrest report, it is more appropriately characterized as a booking report. The exhibit lists only non-adversarial information such as Allen's age, address, height and weight, the jail where he was held, and the charge on which he was arrested. While this booking report was created by law enforcement, the biographical information on the printout was obtained and recorded in

8

the course of a ministerial, nonevaluative booking process. In line with the foregoing, we conclude that the exhibit fell within the ambit of Evidence Rule 803(8) and was not subject to the police records exclusion. Consequently, the trial court properly admitted State's Exhibit 7.

## 2. *State's Exhibit 16*

Next, Allen contends that the trial court improperly admitted State's Exhibit 16, which consists of Crawford's handwritten statement to Matteson police officers. Allen maintains that because the exhibit amounts to "an out of court statement that the [State] was offering for the truth of the matter asserted," it should have been excluded from the evidence presented at trial. (Appellant's Br. p. 18).

The record reflects that when the State moved to admit Exhibit 16 during Crawford's testimony, Allen objected because "[t]his is nothing more than an attempt to bolster [Crawford's] direct testimony to previous statements, which is improper and prejudicial." (Tr. p. 56). At no point did Allen object to the admission of the statement based on hearsay. A defendant may not object on one ground at trial and then raise a different objection on appeal. *Houser v. State*, 823 N.E.2d 693, 698 (Ind. 2005). Because Allen failed to object on hearsay grounds before the trial court, he has waived his claim for our review.

## 3. *Allen's Proffered Exhibit*

Lastly, Allen asserts that the trial court abused its discretion when it excluded his proffered Exhibit C, which consisted of a receipt from the Flash Cab taxi company. A trial court's ruling excluding evidence may not be challenged on appeal unless a

9

substantial right of the party is affected and the substance of the evidence was made known by an offer of proof or apparent from the context. Evid. R. 103; *Benson v. State*, 762 N.E.2d 748, 753 (Ind. 2002). Here, Allen failed to make an offer of proof when the trial court excluded the receipt. Looking at the context in which the exhibit was offered, we note that Allen's mother testified that it was a receipt from the Flash Cab taxi company, without describing the proffered exhibit in further detail. As such, we have no information indicating the date of the receipt, the time in question, or to whom the receipt was made out. Therefore, as Allen did not provide us with a record adequate for review, he has waived the argument.

Waiver notwithstanding, we cannot conclude that the trial court abused its discretion by excluding Allen's proffered receipt. Allen offered the receipt in an attempt to bolster his theory of defense by creating a more definitive timeline of events. Allen presented to the jury the theory that he was home alone all evening until his mother returned from work and then he accompanied her, in her car, to pick up his niece from the babysitter. In this light, Allen's mother testified that she ended her workday around 9 p.m. and took a taxi to where her car was parked. She then drove home to pick up Allen and together, they drove to the babysitter's. Assuming the taxi receipt was for the evening at issue, it is irrelevant to Allen's theory of defense. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid. R. 401. The fact that Allen's mother took a taxi from her place of employment to where her car was parked is not relevant to determine whether Allen was

10

home alone that evening. Therefore, the trial court properly excluded the proffered defense Exhibit C.

## II. *Sufficiency of the Evidence*

Allen argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for robbery and attempted robbery. When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Walker v. State*, 984 N.E.2d 642, 644 (Ind. Ct. App. 2013). We may look only to the evidence most favorable to the judgment and reasonable inferences therefrom and will affirm if we conclude that evidence of probative value exists such that a reasonable fact finder could find the elements of the underlying crime proven beyond a reasonable doubt. *Id.*

### 1. *Attempted Robbery*

To convict Allen of attempted robbery, a Class B felony, the State was required to prove that Allen knowingly or intentionally engaged in a substantial step toward the taking of property of another by force or the threat of force while armed with a deadly weapon. *See* I.C. §§ 35-42-5-1; -41-5-1. At trial, the State called Crawford and Harmon as the State's witnesses. Both testified that Allen, together with Black who was armed with a shotgun, entered the Marathon gas station in an attempt to rob it. Crawford and Harmon informed the jury that when Allen and Black returned to the car, they started laughing, saying that they did not get any money but instead where chased away by a hammer. Corroborating Crawford's and Harmon's testimony, Smith stated at trial that the two men who were inside the Marathon gas station drove away in a blue Honda.

11

After Allen was apprehended, police officers found two masks and a gun inside the blue Honda.

Allen now argues that the State failed its burden because there was no DNA or fingerprints on the masks, linking him to the crimes. However, the State's sole burden is to establish the elements of the charge beyond a reasonable doubt. *See Walker v. State*, 984 N.E.2d at 644. Although forensic evidence is helpful to prove a perpetrator's involvement, it is not a necessary element of the charge and therefore not required to sustain a conviction. Here, the State established Allen's participation in the crimes through the testimony of several witnesses.

In a related argument, Allen suggests that the testimony given by Crawford and Harmon was not credible as they were testifying as part of their plea agreement with the State. Rather, he maintains that only his own version of what occurred that evening— that he was home alone—is consistent with the evidence presented at trial. It is a general rule that judging the credibility of witnesses lies squarely within the province of the jury. *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001), *cert. denied* 534 U.S. 1105 (2002). Having said that, we also note that the testimony of an accomplice is subject to high scrutiny. *Id*. at 496. The fact that the accomplice may not be completely trustworthy goes to the weight and credibility of the witness' testimony, something that is completely within the province of the jury and cannot be reviewed on appeal. *Id*. at 497. Here, the jury was apprised of Crawford's and Harmon's involvement and the inconsistencies within their respective declarations. It was the jury's prerogative as to how much weight

and credibility to give their testimonies. Therefore, Allen's argument essentially amounts to a request to reweight their credibility; we decline his invitation to do so.

### 2. *Robbery*

To convict Allen of robbery, a Class B felony, the State was required to establish that Allen knowingly or intentionally took property from another person by force or the threat of force while armed with a deadly weapon. *See* I.C. § 35-42-5-1. Again, Crawford and Harmon testified that Allen and Black entered the Easy Food Mart, donned with masks and armed with a sawed-off shotgun with the intent to rob the store. They returned to the car with cash from the register and lottery money. Crawford testified that they used some of the proceeds to buy snacks and drinks and to rent two hotel rooms. When the four men were apprehended, the police officers found the masks in the blue Honda and the remainder of the cash on the men.

Repeating his argument that Crawford and Harmon were not credible witnesses, Allen reiterates that their testimonies should be rejected and only his version of events should be accepted. Again, this is an invitation to invade the province of the jury by reweighing the credibility of witnesses, which we refuse to do. We conclude that the State presented sufficient evidence to sustain his conviction for robbery and attempted robbery.

### III. *Right to a Speedy Trial*

Lastly, Allen contends that his right to a speedy trial was violated because he was not brought to trial within seventy days of making the request, as required by Indiana Criminal Rule 4(B).

13

The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee the right to a speedy trial. *Wilkins v. State*, 901 N.E.2d 535, 537 (Ind. Ct. App. 2009), *trans. denied*. The provisions of Indiana Criminal Rule 4 implement these protections and provide, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or here there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Crim. R. 4(B)(1).

First, we note that a defendant waives review of this issue on appeal if he does not make a motion for discharge or motion for dismissal prior to trial. *Hampton v. State*, 754 N.E.2d 1037, 1040 (Ind. Ct. App. 2001). Such a request provides an enforcement mechanism for Indiana Criminal Rule 4(B) and a defendant's failure to attempt to enforce his request for a speedy trial waives any issue thereon. *Id*. There is no indication in the record that Allen moved for discharge or dismissal prior to trial. Therefore, Allen's claim is waived.

Waiver notwithstanding, we conclude that Allen's right to a speedy trial was not violated. Allen bases his argument on his *pro se* request for a speedy trial, made at the initial hearing on September 18, 2003. However, on October 10, 2003, Allen's counsel withdrew the request for a speedy trial and filed a motion to vacate the trial date, which the trial court granted. Allen now claims that he never agreed to his counsel's motion to vacate the trial date. We have held that with respect to seeking a speedy trial, a defendant

14

speaks to the court through his counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000), *reh'g denied*. "To require the trial court to respond to both defendant and counsel would effectively create a hybrid representation to which defendant is not entitled." *Id.* Thus, Allen effectively withdrew his speedy trial request on October 20, 2003 and no new request for a speedy trial was ever made. Consequently, we find that because Allen abandoned his request for an early trial, the trial court did not violate his right to a speedy trial.

CONCLUSION

Based on the foregoing, we conclude that (1) the trial court properly admitted and excluded certain evidence; (2) the State presented sufficient evidence beyond a reasonable doubt to sustain Allen's conviction; and (3) the trial court did not violate Allen's right to a speedy trial.

Affirmed.

KIRSCH, J. and ROBB, C. J. concur