Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 18 2014, 9:23 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL C. KEATING**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CRAIG SAMPSON,           ) | |
|             ) | |
| Appellant-Defendant,   ) | |
|             ) | |
| vs.           ) | No. 87A01-1312-CR-534 |
|             ) | |
| STATE OF INDIANA,     ) | |
|             ) | |
| Appellee-Plaintiff.    ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT NO. 2
The Honorable Robert R. Aylsworth, Judge
Cause No. 87D02-1201-FC-30

**August 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Craig Sampson was convicted of Child Molesting as a Class C felony[1] and sentenced to four years, with one year executed and three years suspended to probation. Upon appeal, Sampson presents three issues for our review:

1. Did the trial court abuse its discretion in admitting evidence pertaining to the Child Sexual Abuse Accommodation Syndrome?

2. Did the trial court abuse its discretion in admitting victim impact evidence?

3. Did evidence that the child victim showed no indication of coaching constitute improper vouching?

We affirm.

S.B. and her family attended the Tennyson Free Methodist Church in Warrick County, where S.B.'s father, John, was the pastor of the church. Sampson was also a member of the church. S.B. considered Sampson to be a "friend" and they would do "a lot of things together." *Transcript* at 35. S.B. would sit beside Sampson or on his lap during church sermons or the two would play games during the church service.

In 2008 or 2009, when S.B. was nine or ten years old, S.B. went to Sampson's house after church. Back at Sampson's house, while Sampson's wife took a nap, Sampson watched television and S.B. played games on Sampson's computer. At some point, Sampson asked S.B. to get up from the computer chair so he could sit down. S.B. then sat on Sampson's lap and asked Sampson to scratch her back in a spot that itched.

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-42-4-3(b) (West, Westlaw 2013), in effect at the time this offense was committed classified it as a class C felony. This statute has since been revised and in its current form reclassifies the offense as a Level 4 felony. *See* I.C. § 35-42-4-3(b) (West, Westlaw current with all 2014 Public Laws of the Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed prior to that date, it retains the former classification.

According to S.B., Sampson began rubbing her back under her shirt and then "slowly moved to the front of [her] body, into [her] pants." *Id*. at 49. S.B. testified that Sampson rubbed her stomach area and then moved his hand inside her pants and under her underwear. Sampson touched S.B.'s vagina, and S.B. felt a "tingling sensation." *Id*. at 54. When S.B. asked Sampson to stop, he slowly removed his hands from inside her underwear. Sampson told S.B. not to tell her parents or he would be in trouble. S.B. did not tell anyone about the incident because "I was scared and didn't understand what was wrong with it, and he told me not too [sic], and at that point I trusted him, so I didn't." *Id*. at 55.

During the summer of 2011, S.B. attended a church camp during which one of the camp groups discussed sexual purity and that uncomfortable touches should be reported. S.B. decided to report the incident involving Sampson because "it just kept coming back to me and bothering me, I had flashbacks of the experience." *Id*. at 57. S.B. first told her mother, and later, told her father about her encounter with Sampson. S.B.'s parents reported the incident to police, and an investigation began.

Investigators took S.B. to Holly's House in Evansville. Holly's House is a child and adult advocacy center that provides a neutral and comfortable place to conduct interviews of children and their families who have been victims of abuse. Jenny Wood, the Associate Director and a child forensic interviewer at Holly's House, conducted a forensic interview of S.B. During the interview, S.B. recounted the incident where Sampson touched her in her private area. During her trial testimony, Wood explained

3

that she had been trained to detect signs of coaching during a forensic interview and further testified that she did not observe any signs that S.B. had been coached.

On January 20, 2012, the State charged Sampson with child molesting as a Class C felony. On October 23, 2013, a jury found Sampson guilty as charged. The trial court sentenced Sampson to four years, with one year executed at the Warrick County Security Center and three years suspended to probation.

Sampson presents three issues for our review, each of which concerns the admissibility of portions of the State's evidence. We review challenges to the admission of evidence pursuant to the following standard:

> The admission or exclusion of evidence lies within the trial court's sound discretion and is afforded great deference on appeal. We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor.

*Meister v. State,* 912 N.E.2d 412, 414 (Ind. Ct. App. 2009) (internal citations omitted), *trans. denied.* Moreover, even if the trial court abuses its discretion in admitting evidence, we will leave the judgment undisturbed if the error was harmless. *Granger v. State,* 946 N.E.2d 1209 (Ind. Ct. App. 2011). An error in the admission of evidence is harmless "when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Id.* at 1213 (quoting *Lafayette v. State,* 917 N.E.2d 660, 666 (Ind. 2009)). In other words, we

4

will reverse "only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Id.* (quoting *Wales v. State*, 768 N.E.2d 513, 521 (Ind. Ct. App. 2002), *trans. denied*).

1.

Sampson argues that the trial court abused its discretion in permitting Ms. Wood to explain the Child Sexual Abuse Accommodation Syndrome (CSAAS).[2] In *Steward v. State*, 652 N.E.2d 490 (Ind. 1995), our Supreme Court held that testimony regarding CSAAS was inadmissible to prove that a child was sexually abused because the syndrome was not scientifically reliable.[3]

Here, Ms. Wood was permitted to testify, over objection,[4] as to the five categories of CSAAS. Even if it was error to have allowed such testimony, Sampson has not

---

[2] The CSAAS describes five experiences typically occurring in sexually abused children: (1) secrecy about the sexual abuse, often ensured by threats of negative consequences of disclosure; (2) emotional helplessness to resist or complain; (3) entrapment and accommodation, where the child sees no way to escape ongoing abuse and thus learns to adapt; (4) delayed, conflicted, and unconvincing disclosure of the abuse; and (5) retraction of the child's allegations in an attempt to restore order to the family structure when the disclosure threatens to destroy it. *See Steward v. State*, 652 N.E.2d 490 (Ind. 1995) (citing Roland C. Summit, *The Child Sexual Abuse Accommodation Syndrome,* 7 Child Abuse & Neglect 177, 181–88 (1983)).

[3] The *Steward* Court went on to recognize that once a child's credibility is called into question, proper expert testimony regarding the syndrome, while potentially harming the defendant's interests, could not be said to be unfairly prejudicial. Rather, in such situation, testimony regarding the syndrome could "'inform[] jurors that commonly held assumptions are not necessarily accurate and allow[] them to fairly judge credibility.'" *Steward v. State*, 652 N.E.2d at 499 (quoting *State v. Moran*, 728 P.2d 248, 251-52 (Ariz. 1986)). Here, defense counsel pointed out that S.B. delayed disclosure for nearly two years and continued to visit with Sampson after the incident. In such case, testimony regarding CSAAS may have been admissible to explain such behavior. As we discuss, *infra*, however, Ms. Wood's testimony regarding CSAAS was very general in that she only identified the five categories and did not make any comparisons with S.B.'s behavior.

[4] When the prosecutor asked Ms. Wood about CSAAS, defense counsel objected on grounds that Ms. Wood was not qualified to testify about CSAAS and also that any testimony relating to CSAAS was not

5

demonstrated how he was harmed. First, Ms. Wood's testimony was very general in nature, giving a brief explanation of the five categories. As Sampson acknowledges, Ms. Wood was not asked to compare S.B.'s behavior to any of the categories in the syndrome.

Further, Sampson argues that Ms. Wood should not have been permitted to identify all five categories of CSAAS because only two of the categories were pertinent to the case at hand. This argument is simply that reference to the remaining categories was irrelevant and thus, inadmissible under Ind. Evidence Rule 401. Having reviewed the record, we conclude that the general identification by Ms. Wood of the five categories of the syndrome, three of which were inapplicable, likely had no impact on the jury's verdict. We may disregard errors in the admission of evidence as harmless unless the error affected the substantial rights of the party. *See Goldsberry v. State*, 821 N.E.2d 447 (Ind. Ct. App. 2005).

Finally, the complained-of testimony was cumulative of Ms. Wood's prior testimony wherein she explained, without objection, that disclosure of sexual abuse is a process and that in her experience it was not unusual for a molestation victim to delay in disclosing the abuse or to continue to be around the individual responsible for the molestation. *See Allen v. State*, 994 N.E.2d 316, 319 (Ind. Ct. App. 2013) ("any error caused by the admission of evidence is harmless error for which we will not reverse if the erroneously admitted evidence was cumulative of other evidence properly admitted").

2.

relevant. The State responded by asserting that Ms. Wood "has been qualified with her specialized training and knowledge," and the trial court overruled defense counsel's objections. *Transcript* at 121.

Sampson argues that the trial court abused its discretion in admitting victim impact evidence. Here, in explaining her decision to disclose the molestations, S.B. testified that "it just kept coming back to me and bothering me, I had flashbacks of the experience." *Transcript* at 57. The State then asked S.B. how the incident affected her and S.B. testified, "there's certain things that if something is said or something is done at school it just brings me back to this and it – it gets under my skin." *Id.* at 58. Defense counsel objected on grounds of relevancy, which objection was overruled. S.B.'s testimony continued:

> [Prosecutor]:
> What kind of triggers, [S.B.]?
> A. There's a kid in my class whose name is Craig.
> Q. Um hum.
> A. There's – there's so many that I can't name them all and it doesn't occur to me till it happens.
> Q. And you said that the kid named Craig, are you able to be friends with him?
> A. I have never been friends with him.
> [Defense Counsel]:
> Excuse me Your Honor, we're now getting into the new witness dilemma this is the first mention of that name in – in two years.
> [Prosecutor]:
> There's no witness Your Honor, she's talking about a trigger she has.
> [Defense Counsel]:
> Well he's available to be called, if you're going to talk about him in – you know we have the right to call him.
> COURT:
> I – I think she's testified she's had no contact with him, as I understand it.
> [Defense Counsel]:
> Well she's testifying that she wanted to, does he even exist and who is he? I just don't want her to stray in a new unlisted witnesses. Thank you, Your Honor.

7

*Id.* at 59. The State then changed the course of questioning.

We begin by noting that the testimony referred to is not traditional victim impact evidence in the form of the crime's impact on individuals unrelated to the crime. Further, the above-referenced portion of the transcript cited by Sampson in his appellant's brief as the basis for his argument is incomplete in terms of what he claims is victim impact evidence, and this is likely so because of his objection. We fail to see how S.B.'s testimony in this regard, to the extent it is incomplete and/or irrelevant, had a substantial impact on the jury's verdict. Finally, to the extent S.B.'s testimony was in reference to "triggers," such testimony was relevant to explain her delayed disclosure of the incident. Having reviewed the record before us, we conclude that any error in the admission of this evidence was harmless.

3.

Sampson argues that Ms. Wood's testimony that S.B. showed no signs of coaching constituted improper vouching. Ind. Evidence Rule 704(b) provides that "[w]itnesses may not testify to . . . whether a witness has testified truthfully."

During direct examination, the State questioned Ms. Wood as follows:

Q. What does the term coaching mean to you?
A. Coaching is a term used in forensic interviewing where someone has told a child what to say and typically it's somebody close to the child and it's usually an untrue statement.
Q. Have you been trained in looking for signs of coaching?
A. Yes.
Q. Okay and have you ever conducted an interview where you believed that a witness or a child had been coached?
A. Yes.
Q. What are some signs that if observed might lead you to believe that a witness or a child has been coached?

8

A.    Typically individuals who have been coached can't recall details because they have not been told details when they were coached to tell a statement.  They may have not be [sic] able to answer questions that go beyond what their statement – the statement that they know about, such as where did it happen, was there anybody with you, so more detail oriented questions, somebody who had been victimized could typically answer but since they were coached they could not because that information was not shared with them.

Q.    During your interview with [S.B.], did you observe any signs that she had been coached?

A.    No.

*Transcript* at 124-25.

Sampson did not object to this testimony at trial.  Failure to object at trial waives an issue on appeal unless the defendant can show fundamental error.  *Konopasek v. State*, 946 N.E.2d 23 (Ind. 2011).  "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process."  *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).  In other words, fundamental error is defined as an error so prejudicial to the rights of a defendant that a fair trial is rendered impossible.  *Mathews v. State*, 849 N.E.2d 578.

In *Kindred v. State*, 973 N.E.2d 1245 (Ind. Ct. App. 2012), this court discussed the general prohibition against vouching for the credibility of a child witness in a molestation case.  Interpreting a case by our Supreme Court, *Hoglund v. State*, 962 N.E.2d 1230 (Ind. 2012), the *Kindred* court held:

[G]eneral testimony about the signs of coaching, as well as the presence or absence of those signs in the child victim at issue, preserves the ultimate credibility determination for the jury and therefore does not constitute vouching.  By contrast, where a witness opines as to whether the child victim was coached—offering an ultimate opinion as [the witness] did

9

here—the witness invades the province of the jury and vouches for the child.

973 N.E.2d at 1257.

In *Archer v. State*, 996 N.E.2d 341 (Ind. Ct. App. 2013), *trans. denied*, this court considered whether expert testimony that a child witness, when interviewed, showed no signs of having been coached violated the rule established in *Hoglund* and adhered to in *Kindred*. The *Archer* court distinguished between testimony that an expert believed the child witness had been coached and testimony that an expert found no indicators of coaching when interviewing the child. The court found that latter to be admissible.

Here, Ms. Wood's testimony falls into the latter category in that she testified that she observed no signs that S.B. had been coached. Ms. Wood did not give her opinion as to whether S.B. had been coached. Sampson has not established error in the admission of Ms. Wood's testimony regarding "coaching," let alone fundamental error.

Judgment affirmed.

VAIDIK, C.J., concurs.

MAY, J., concurs in result.

10