**Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the
case.**



FILED

Sep 25 2014, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GARY L. GRINER**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH WASHINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1402-CR-64 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1307-FC-159

**September 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Kenneth Washington appeals his conviction of burglary, a Class C felony, Ind. Code § 35-43-2-1 (1999). We affirm.

Carlton Briggs was the property manager for a house in South Bend, Indiana. Jama Luttrell owned the house and used it as a rental property. On July 13, 2013, Briggs and a prospective tenant met at the house at 8:30 a.m. Briggs had last visited the house two days before the meeting. He had noted during his visit that all doors and windows were secure, and "everything seemed okay" inside. Tr. p. 214. He did not go into the basement at that time.

When Briggs arrived at the house on July 13, the prospective tenant said that a bike was in the backyard. Briggs went into the backyard to look at the bike, which did not belong there. As Briggs and the prospective tenant returned to the front of the house, they saw a man later identified as Washington walk out of the house's front door.

Briggs told Washington he was not supposed to be in there and that he was calling the police. Washington ran to the front gate, closed it behind him, and ran away from the house. Briggs chased him. Briggs called the police as he ran, providing a description of Washington. He saw Washington try to enter another home, and when that failed Washington resumed running.

Briggs lost sight of Washington but encountered a police officer and provided a description again. The officer directed Briggs to return to Luttrell's house. Briggs met other officers at the house and went inside with them. The house's back door had been pried open and then closed again, and the deadbolt was laying on the floor inside. Briggs

found pieces of copper pipe in a plastic bag on a countertop by the backdoor. The pieces had been ripped out of the basement and broken up.

Briggs also saw clothing scattered on the floor in another room. The previous tenant had left a bag of clothes there, and it looked to Briggs as though someone had slept on the clothes.

Next, an officer at the house was informed that a suspect had been apprehended, and Briggs agreed to see if he recognized the person. An officer drove Briggs to a location where Washington was in custody. Briggs, who had last seen Washington twenty to thirty minutes prior, identified him as the man he saw exiting Luttrell's house and running away.

The State charged Washington with burglary and resisting law enforcement, a Class A misdemeanor. Washington filed a motion to suppress all evidence related to Briggs' "show-up" identification of Washington. The trial court denied the motion after a hearing. A jury determined that Washington was guilty as charged. The court sentenced Washington, and this appeal followed.

Washington raises three issues, which we expand and restate as:

I.      Whether the trial court erred by admitting evidence of the "show-up" identification.[1]

---

[1] In its brief, the State frames this issue in two places as follows: "The State presented sufficient evidence that the Defendant committed dealing in methamphetamine and possession of methamphetamine within one thousand feet of a housing complex." Appellee's Br. pp. i, 8. Elsewhere in its brief, the State more correctly states the issue as "Whether the trial court abused its discretion in admitting evidence of Briggs' identification of Defendant." *Id.* at 1. The record is devoid of any reference to methamphetamine or public housing. We conclude that the State copied the errant passages from another brief, and we recommend more careful editing in the future. Even so, we do not excuse the carelessness of the deputy who drafted the State's brief.

3

II.     Whether the trial court abused its discretion in instructing the jury.

III.    Whether the trial court abused its discretion in limiting Washington's closing argument to the jury.

IV.     Whether there is sufficient evidence to support Washington's burglary conviction.

## I. "SHOW-UP" IDENTIFICATION

Washington argues that Briggs' "show-up" identification of Washington shortly after his capture was the result of an unduly suggestive procedure that violated his right to due process under the Fourteenth Amendment. Thus, he concludes, the trial court erred in admitting Briggs' testimony about the identification.

As a preliminary matter, the State argues that Washington waived appellate review of this claim. Prior to trial, Washington filed a motion to suppress all evidence related to Briggs' identification of him. However, the filing of a motion to suppress is insufficient to preserve an issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). A party must offer a contemporaneous objection at the time the evidence is introduced at trial. *Id.* The reasoning behind this rule, in part, is to immediately and fully alert the trial court of the legal issue. *Shoultz v. State*, 995 N.E.2d 647, 654 (Ind. Ct. App. 2013), *trans. denied*.

At trial, Briggs described being taken to a location to see if he recognized the person they had in custody. He said he had identified Washington as the burglar and explained at length, without objection, the basis for his identification. Further, Washington cross-examined Briggs at length about the identification procedure and the

4

strength of Briggs' conviction that Washington was the person he saw at Luttrell's house and in police custody.

After Briggs was excused from the stand and after a ten-minute recess, the attorneys approached the bench. Washington's counsel said he "made a tactical error" and "should have objected" to the identification testimony. Tr. pp. 279-80. At that point, the trial court noted the objection for the record and deemed it overruled. However, Washington's objection came too late to allow the trial court to timely consider the matter. He has waived appellate review of his challenge to the admissibility of Briggs' testimony. *See Shoultz*, 995 N.E.2d at 654 (challenge to evidence waived because defendant did not assert objection contemporaneously with the introduction of the evidence).

In any event, if a trial court errs in admitting evidence, the admission is harmless error if it is cumulative of other evidence appropriately admitted. *Allen v. State*, 994 N.E.2d 316, 319 (Ind. Ct. App. 2013). At trial, an officer testified without objection that she brought Briggs to Washington's location and that Briggs identified Washington as the man he saw leaving Luttrell's house. Thus, even if Washington had timely objected to Briggs' testimony, any error in its admission was harmless.

Waiver and harmless error notwithstanding, due process of law requires suppression of testimony concerning an out-of-court identification if the procedure employed was unnecessarily suggestive. *James v. State*, 613 N.E.2d 15, 27 (Ind. 1993). Factors to be considered in evaluating the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of

5

attention; (3) the accuracy of the witness's prior description of the criminal; and (4) the level of certainty demonstrated by the witness. *Id.* Another factor is the amount of time that elapsed between the commission of the crime and the show-up identification. *Slaton v. State*, 510 N.E.2d 1343, 1348 (Ind. 1987).

Here, Briggs had ample opportunity to view Washington as he exited the house and ran away. In addition, Briggs testified that he watched Washington carefully as he fled. Finally, only twenty to thirty minutes passed between Briggs' last sight of Washington and the "show-up" identification, and Briggs was certain that Washington was the burglar. Thus, even if the claim had been preserved for review, it is without merit.

## II. JURY INSTRUCTION ON EYEWITNESS IDENTIFICATION

Washington argues the trial court erred in rejecting his proposed jury instruction on eyewitness identification. Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Brakie v. State*, 999 N.E.2d 989, 993 (Ind. Ct. App. 2013), *trans. denied*. When reviewing the refusal to give a proposed instruction, we consider: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. *Id.*

Washington tendered Instruction Number Four, which states as follows:

> One of the most important issues in this case is the identification of the Accused as the perpetrator of the crime. The State has the burden of proving identity, beyond a reasonable doubt.

6

It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Accused before you may convict him. If you are not convinced beyond a reasonable doubt that the Accused was the person who committed the crime, you must find the Accused not guilty.

Identification testimony is an expression of the belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

If the identification by the witness may have been influenced by the circumstances under which the Accused was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see Accused as a factor bearing on the reliability of the identification.

Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in the witness' testimony.

Appellant's App. p. 101.

The trial court rejected this proposed instruction, asserting that the Indiana Supreme Court does not "favor instructions such as this." Tr. p. 403. The trial court is correct, because Indiana law "is distinctly biased against jury instructions which single out eyewitness identification testimony." *Hopkins v. State*, 582 N.E.2d 345, 353 (Ind. 1991) (quoting *Brown v. State*, 468 N.E.2d 841, 843 (Ind. 1984)). In addition, a trial court must not give an instruction that emphasizes the testimony of a single witness. *Id.*

In this case, Washington's proposed instruction unduly focused on eyewitness testimony and thus contravenes the holding in *Hopkins*. Furthermore, the trial court instructed the jury on factors to consider when weighing witnesses' testimony. Thus, the

7

subject of Washington's proposed instruction was adequately covered by other instructions. *See Emerson v. State*, 724 N.E.2d 605, 608-609 (Ind. 2000) (trial court did not err in rejecting instruction on eyewitness identification; general instruction on credibility of witnesses was sufficient to address the subject). The trial court did not abuse its discretion.

### III. CLOSING ARGUMENT

Washington claims the trial court erroneously limited his closing argument. Conduct during a closing argument is a matter within the sound discretion of the trial court, and a conviction will not be reversed unless there has been a clear abuse of that discretion resulting in prejudice to the accused. *Bowles v. State*, 737 N.E.2d 1150, 1154 (Ind. 2000).

The transcript shows that during voir dire, Washington read a statement to the panelists about eyewitness identification. Tr. p. 427. He reread the statement to the jury during closing argument. *Id.* at 429-30. The trial court barred Washington from citing to the source of the statement. *Id.* at 427-28. Washington claims he was prejudiced by the court's decision because "the jury was left to fend for itself about the law on misidentification because the trial court refused to allow argument or instructions on the law." Appellant's Br. p. 14. He fails to cite to any authority to establish that he should have been allowed to tell the jury the source of the statement on eyewitness testimony.

Further, the record fails to show any prejudice. As noted above, the trial court's instruction on witness credibility was sufficient to inform the jury how to weigh eyewitness testimony. In addition, the trial court permitted Washington to address the

8

jury about issues involving eyewitness identification. Washington has not demonstrated that the trial court abused its discretion by preventing him from citing to the source of his comments on witness identification.

## IV. SUFFICIENCY OF THE EVIDENCE

When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. Ct. App. 2012). The evidence and all reasonable inferences are viewed in a light most favorable to the conviction. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Holloway v. State*, 983 N.E.2d 1175, 1178 (Ind. Ct. App. 2013).

In order to obtain a conviction for burglary, the State was required to prove beyond a reasonable doubt that Washington (1) broke and entered into (2) Jama Luttrell's building (3) with the intent to commit theft in the building. Ind. Code § 35-43-2-1.

Washington argues there is insufficient evidence that he intended to commit theft in Luttrell's house. The evidentiary inference pointing to the defendant's intent must be separate from the evidentiary inference of the defendant's breaking and entering. *Baker v. State*, 968 N.E.2d 227, 230 (Ind. 2012).

In this case, the damage to the house's back door supports a reasonable inference of breaking and entering. Regarding the intent to commit theft, Briggs and an officer

9

found that a copper pipe had been ripped away from fixtures in the basement, broken down into smaller pieces, and bagged for transport. In addition, Washington was in the house when Briggs arrived. This is sufficient evidence of intent to commit theft separate and distinct from the breaking and entering. *See id.* at 231 (sufficient evidence of intent to commit theft where the defendant opened cupboards and drawers after breaking into a structure).

Washington claims that Briggs and the officers did not find any tools for cutting pipe and that the pipe pieces could have been cut months prior to Briggs' discovery. These claims are requests to reweigh the evidence, which our standard of review forbids.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and BAILEY, concur.