## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2018, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Lee M. Stoy, Jr.
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Willie Langford, *Appellant-Defendant,* | December 11, 2018 |
| v. | Court of Appeals Case No. 49A05-1711-CR-2653 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Anne Flannelly, Magistrate |
| | Trial Court Cause No. 49G04-1609-F5-35289 |

**Pyle, Judge.**

# Statement of the Case

Willie Langford ("Langford") appeals his conviction for operating a vehicle with an alcohol concentration equivalent to at least 0.08 grams of alcohol but less than 0.15 grams of alcohol per 100 milliliters of blood,[1] which was enhanced to a Level 5 felony based upon his previous conviction for operating a vehicle while intoxicated ("OVWI") causing death ("OVWI death conviction"). He contends that the trial court abused its discretion during the enhancement phase of his bifurcated trial when it admitted into evidence a booking report from Langford's OVWI death conviction. Because the booking report was admissible under the public records exception to hearsay, the trial court properly admitted the evidence, and we affirm Langford's conviction.

We affirm.

# Issue

Whether the trial court abused its discretion by admitting a booking report into evidence during the enhancement phase of Langford's bifurcated trial.

# Facts

On September 6, 2016, an officer from the Indianapolis Metropolitan Police Department ("IMPD") pulled over Langford's vehicle based upon Langford's failure to use his turn signal when making a turn. When speaking with

---

[1] IND. CODE §§ 9-30-5-1; 9-30-5-3.

Langford at his car window, the officer smelled a "very strong" odor of alcohol and noticed that Langford had "red glossy eyes" and "slowed slurred speech." (Tr. Vol. 2 at 22). IMPD officers administered various field sobriety tests, which Langford failed, and ultimately obtained a warrant for a blood test, which revealed that Langford had a blood alcohol concentration of .085 grams of alcohol per 100 milliliters of blood.

[4] The State ultimately charged Langford with Count 1, Class C misdemeanor OVWI, which was enhanced to a Level 5 felony based on his OVWI death conviction that had occurred in 1989; and Count 2, Class C misdemeanor operating a vehicle with an alcohol concentration equivalent to at least 0.08 grams of alcohol but less than 0.15 grams of alcohol per 100 milliliters of blood, which was also enhanced to a Level 5 felony based on his OVWI death conviction.

[5] The trial court held a bifurcated jury trial on September 28, 2017. Following phase one of the trial, the jury found Langford guilty of Count 2 and not guilty of Count 1. During phase two, the enhancement phase, the State presented testimony from Andrew Calderon ("Calderon"), who testified as a fingerprint analyst and keeper of the records for IMPD. Calderon testified that he had compared Langford's thumbprint on State's Exhibit 3, which was a fingerprint card upon which Calderon had personally obtained Langford's thumbprint just prior to the enhancement phase of the trial, to a thumbprint contained on State's Exhibit 4, which was a document titled "Officer's Arrest Report/Book-In Slip" ("booking report") and was the booking report from Langford's OVWI

death conviction. (State's Ex. 4). Calderon testified that a booking report, such as contained in State's Exhibit 4, was a "report filled out by an arresting officer subsequent to an initial arrest" and that, in addition to the fingerprint and general arrest information, it contained "various demographics" of the arrested individual. (Tr. Vol. 2 at 168). For example, State's Exhibit 4 contained Langford's name, address, date of birth, gender, race, and Social Security number. The exhibit also contained procedural and ministerial information relating to Langford's arrest and booking for the OVWI causing death offense, including the date and location of his arrest, the arresting officer, the booking officer, the case cause number, and the statute citation for the offense charged. Calderon testified that the booking report was filled out by an officer who had a duty to accurately complete it and that the report was kept in the ordinary and routine course of business. When the State moved to admit State's Exhibit 4, Langford objected based on hearsay. The State argued that the exhibit was admissible under the public records exception to hearsay, and the trial court agreed and admitted the exhibit into evidence. Calderon then testified that the thumbprint on State's Exhibit 3 and the thumbprint on State's Exhibit 4 were made by "one in the same person[,]" specifically Langford. (Tr. Vol. 2 at 173). Additionally, the State offered into evidence certified copies of the charging information and abstract of judgment from Langford's OVWI death conviction case.

[6] The jury determined that the State had proven that Langford had a previous conviction for purposes of enhancing Count 2, and the trial court entered

judgment of conviction for Count 2 as a Level 5 felony. The trial court imposed a four (4) year sentence for Langford's Level 5 felony conviction and ordered that it be served in Community Corrections. Langford now appeals.

## Decision

[7] Langford argues that the trial court abused its discretion by admitting State's Exhibit 4 during the enhancement phase of his trial. Specifically, he argues that the evidence was hearsay and should have been excluded. The State contends that State's Exhibit 4 was a booking report and was admissible under the public records exception to hearsay contained in Evidence Rule 803(8). Langford contends, however, that State's Exhibit 4 should be considered as an "investigative report[,]" which would make it inadmissible under Evidence Rule 803(8)(i). (Langford's Br. 9).

[8] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*. Where a trial court's evidentiary ruling rests upon the interpretation of a rule of evidence, which is a question of law, we conduct a *de novo* review. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018).

[9] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter

asserted. Ind. Evidence Rule 801(c). Generally, "[h]earsay is not admissible unless these rules [of evidence] or other law provides otherwise." Evid. R. 802. One exception to the hearsay rule is for "public records," which provides as follows:

> **(8) Public Records.**
>
> (A) A record or statement of a public office if:
>
>> (i) it sets out:
>>
>>> (a) the office's regularly conducted and regularly recorded activities;
>>>
>>> (b) a matter observed while under a legal duty to [observe and] report; or
>>>
>>> (c) factual findings from a legally authorized investigation; and
>>
>> (ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.
>
> (B) Notwithstanding subparagraph (A), the following are not excepted from the hearsay rule:
>
>> (i) *investigative reports by police* and other law enforcement personnel, except when offered by an accused in a criminal case;
>>
>> (ii) investigative reports prepared by or for a public office, when offered by it in a case in which it is a party;
>>
>> (iii) factual findings offered by the government in a criminal case; and

> (iv) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Evid. R. 803(8) (emphasis added).

[10]   We agree with the State that State's Exhibit 4 was a booking report, not an investigative report, and that it was admissible under the public records exception to hearsay. The public records hearsay exception "is based on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Allen v. State*, 994 N.E.2d 316, 320 (Ind. Ct. App. 2013) (citing *Fowler v. State*, 929 N.E.2d 875, 878 (Ind. Ct. App. 2010), *trans. denied*). We have previously discussed the admissibility of a booking report under the public records exception in Evidence Rule 803(8) and held that "police records created in connection with routine booking procedures" are admissible under the public records exception. *Fowler*, 929 N.E.2d at 879. We recognize that the public records exception in Rule 803(8)(i) "excludes investigative police reports when offered against the accused in criminal trials." *Fowler*, 929 N.E.2d at 879. Investigative police reports are generally excluded because "the adversarial nature of the confrontation between the police and the defendant in criminal cases" at the scene of the crime can lead a police officer to have observations that "are not as reliable as observations by public officials in other cases[.]" *Id.* "However, this exclusion does not bar admission of police records pertaining to 'routine, ministerial, objective nonevaluative matters made in non-adversarial settings.'" *Allen*, 994 N.E.2d at 320 (quoting *Fowler*, 929 N.E.2d at 879). "'The rote recitation of

biographical information in a booking sheet ordinarily does not implicate the same potential perception biases that a subjective narrative of an investigation or an alleged offense might.'" *Fowler*, 929 N.E.2d at 879 (quoting *United States v. Dowdell*, 595 F.3d 50, 72 (1st Cir. 2010)). "Due to the lack of any motivation on the part of the recording official to do other than mechanically register an unambiguous factual matter . . . , such records are, like other public documents, inherently reliable." *Id.* (quoting *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985), *reh'g denied*).

[11] Here, State's Exhibit 4 contained biographical information about Langford and procedural information about his OVWI death case. The exhibit contained factual, objective information that was obtained and recorded as part of the ministerial, nonevaluative booking process. Thus, the exhibit was a booking report admissible under Evidence Rule 803(8). *See, e.g.*, *Allen*, 994 N.E.2d at 320 (explaining that a State's exhibit that contained "non-adversarial information"—including the defendant's age, address, height and weight, the jail where he was held, and the charge upon which he was arrested—was "more appropriately characterized as a booking report" and was not subject to the investigative police report exclusion); *Fowler*, 929 N.E.2d at 879 (holding that a booking card, which contained biographical information and "was obtained and recorded in the course of a ministerial, nonevaluative booking process[,]" was admissible under the public records exception of Evidence Rule 803(8)). Accordingly, the trial court did not abuse its discretion by admitting State's Exhibit 4 during the enhancement phase of Langford's bifurcated trial.

Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.